## WILEY *v.* SAN PEDRO & CANON DEL AGUA CO. *et al.*

(*Supreme Court of New Mexico. January, 1889.*)

PLEADING—COMPLAINT—SUFFICIENCY OF ALLEGATIONS.
   A bill alleged that defendant executed an agreement in writing for the postponement of the completion of a contract by plaintiff. The writing provided that defendant consented to such postponing if plaintiff would agree to enter upon its completion on notice, and that plaintiff was to be released from damages for discontinuance if the extension was entered into, and contained the clause, plaintiff's "agreement thereto being evidenced by his signature." *Held,* that the bill showed no contract for such postponement where plaintiff's name was not signed to the writing, though it bore the word "Accepted," and where there was no averment that it was accepted.

Appeal from district court, Second district; BRINKER, Judge.

Bill by Solon L. Wiley against the San Pedro & Canon del Agua Company and others, to enforce a mechanic's lien. A demurrer to the bill was sustained, and complainant appeals.

*H. L. Warren,* for appellant. *Childers & Ferguson* and *Catron, Thornton & Clancy,* for appellees.

LONG, C. J. Solon L. Wiley, the appellant in this court, filed in the court below his bill in chancery for an enforcement of an alleged mechanic's lien

upon the property described in the bill, for work done and materials furnished, amounting, as alleged, to $127,522.60. To this bill a demurrer was interposed, the same was sustained, and the cause dismissed. The action of the court in sustaining the demurrer is the only point necessary to be considered. The bill alleged that the defendant company entered into a contract in writing, dated April 21, 1880, a copy of which is made a part of this bill, whereby, among other things, it was agreed that plaintiff should construct for the company a system of water-works, which should include two reservoirs on the Sandia mountains, in New Mexico, with a line of wrought-iron pipes from the reservoir to the company's works. The complainant avers that for this work, which is more fully described in the bill, he was to receive $400,000, to be paid in installments. Complainant avers that under such contract he entered upon its completion, performed, labored, and furnished materials, in all worth over $127,000, and that the work was discontinued on the 24th day of July, A. D. 1882. He avers, further, that no work was done after that date; and that on the 22d day of September, 1883, complainant filed for record, both with the county recorder of Santa Fe and also of Bernalillo county, a claim, which is fully described in the bill, to establish a mechanic's lien on the defendants' real estate. Other averments are also made, but it is not necessary to give them, as the case must be determined upon a question which such averments in no way affect, except as they are further stated.

It will be observed that over one year intervened between the date when the last work was done under the contract and the date when the lien was filed. Section 1524 of the Compiled Laws requires that the claim and statement which constitute the lien shall be filed "within 60 days after the completion of the contract." So, if the contract either was completed at the date when the work was discontinued, or never was completed, in either case there could be no lien, because of the delay in filing the statement required by that section. The complainant in his bill seeks to obviate this objection to the validity of his lien upon the theory that a contract in writing was entered into by the plaintiff and the company, whereby the work was discontinued by such agreement, but was to be again resumed by the plaintiff after the expiration of 90 days from notice that the company desired him to renew the work; and by the averment that he never was so notified, though always ready, able, and willing to perform; and that after waiting a reasonable time for such notice he elected to treat the contract as performed, and filed his lien. The appellee contends, on the contrary, that the bill of complaint fails entirely to show that there ever was any contract whatever between the complainant and the company for such extension of time or a suspension of the work. An examination of the averments of the bill on this point is necessary.

All the averments which relate to this point are as follows: "Your orator further states that by the terms of said contract said reservoir and water-works were to be completed within six months from the date of said contract; and your orator entered upon said work, and was then and there ready, willing, and able to perform and complete the same, in the time and manner required and specified in the said contract; and that, to-wit, on July 14, A. D. 1882, your orator had completed a large portion of said work, and furnished a large part of the material required therefor, in pursuance of said contract, and was then and there ready, able, and willing to fully perform and complete the same; and that on said date said defendant company made, executed, and delivered to your orator a written agreement, a copy of which, marked 'B,' is filed herewith, and prayed to be considered as a part hereof; and thereby said company stipulated and agreed that your orator might and should postpone the completion of said contract; and that your orator should be, and thereby was, released from any right of action which might accrue to said company, and any damages by reason of such part postponement of said work under said contract; and it was thereby agreed that your orator should and would

again enter upon the completion of said contract at once, upon the expiration of three months after being notified so to do; and your orator states that in pursuance of said last-mentioned agreement, to-wit, July 24, 1882, he did discontinue work upon and postponed the completion of said contract, and that from that time hitherto your orator has been at all times ready and willing to fully complete the said contract; but your orator avers the said defendant has wholly failed and neglected to notify or permit your orator to enter upon or complete said contract; and your orator further avers that on September 22, 1883, in consequence of the premises, and by reason of the said failure, neglect, and refusal on the part of the said defendant company to notify or permit your orator to enter upon and complete the portion of said work under said contract which remained unperformed, on said July 24, 1882, and a reasonable and sufficient time therefor having then and there elapsed, your orator elected and determined to declare said contract ended and terminated, as he lawfully might; and your orator, September 22, 1883, and within 90 days after the completion of said contract on his part, did file for record," etc.

The writing to which reference is made in the foregoing averments is as follows:

"GREENFIELD, MASS., July 14, 1882.

"*S. L. Wiley, Esq.:* The San Pedro and Canon del Agua Company consent to your postponing the present completion of its contract with you as to dams in the Sandia mountains, and pipe-line from same to the company's *placers*, provided you agree that you will again enter upon the completion of the same at once, upon the expiration of three months after being notified by the company to do so. You are also released, provided this extension is entered into, from all rights of action which the company may obtain against you for any damage that may during any such discontinuance accrue to the said pipe-line and dams by reason of your discontinuing work and care thereon and thereof; the rights of both the company and yourself being and remaining, to all intents and purposes, as though no discontinuance had been agreed upon. Your agreement hereto being evidenced by your signature. This agreement being in full force and effect from the date when said Burham was authorized to enter into such an extension.

[Signed]     "SAN PEDRO AND CANON DEL AGUA COMPANY,
             "By WALTER BURHAM, Vice-President.

"Accepted."

Although the word "Accepted" is written on the paper called in the bill of complaint an "agreement," neither such word nor the paper is signed by Solon Wiley. His name does not anywhere appear on the paper, except as it is addressed to him. It is not averred in the bill that he in fact did accept it, or that the defendant company ever had the slightest knowledge or notice that he accepted the contract, or regarded himself in any mode under obligation to respect its provisions. It is fair to presume the defendant company, as it is alleged to be a corporation, was managed by a board of directors or trustees. It would appear also from the words, "This agreement being in full force and effect from the date when said Burham was authorized to enter into such extension," that such body had authorized the vice-president to enter into a contract for extension; and, when accepted by Solon L. Wiley, that the beginning of the extension of time for completion was to relate back to the time when Burham was empowered to act. It would appear, also, that Wiley had asked an extension of time; as the paper says, "The company consent to your postponing," or, in effect, consent that you postpone the completion of the contract. This is not an absolute, unconditioned consent to the extension of time, but one made on an expressed condition, written on the face of the paper, in these words: "Provided that you agree that you will again enter upon the completion of the same," etc. There is no averment that Wiley did so agree.

There is nothing on the face of the paper to bind Wiley to any such act. As the extension was only on the condition of such an agreement on the part of Wiley, the paper should show such an agreement, or it should be averred that he did so agree. If Wiley had signed his name below the word "Accepted," then the face of the paper would have been evidence of his acceptance of the condition, and of his agreement to perform, and would be a contract on the face of it. Suppose Wiley had been notified to commence work, had declined to do so, and damage had resulted to the company, for which it had brought action, would this paper on its face have proven an obligation on Wiley to commence work? Certainly not, for the plain reason that Wiley's name is not signed to the contract, and so he does not bind himself to resume work. In such an action, to authorize a recovery, evidence outside the paper would be necessary to establish an agreement by Wiley to resume work on notice.

The averments treat this paper as on its face a contract mutually binding both parties, whereas it is only a proposition by the company, on its face not accepted by Wiley, and without acceptance averred in the bill. It is clear this paper was sent to Wiley, in answer to some proposition of his; that it was prepared ready for him to sign under the word "Accepted." If he did so, it does not appear in the exhibit, and it is not so pleaded in the bill, and for that reason the contract lacks mutuality, has but one party, and does not bind any one on the face of the paper. When every line and word on the paper is inspected, it fails on its face to disclose that Solon Wiley is in any way bound by its terms. It may be that the complainant did in fact accept the conditions imposed, and did agree, upon being notified, to resume the performance of the original contract, but if so the paper does not bear evidence of either such acceptance or agreement; and that he did so agree should have been averred in the bill of complaint.

The complainant makes the paper a part of his bill, and assumes by his averments that it is on its face an agreement between the parties. He avers: "On said date said defendant company made, executed, and delivered to your orator a written agreement, a copy of which is filed," etc. Turning to the paper, it is found to be signed by one party only; that it recites a condition nowhere appearing or alleged to be accepted or agreed to; and an agreement to perform the condition by Wiley is necessary, before the right of extension can become operative against the company.

A further recital in the paper renders the complainant's contention untenable. It is the following: "Your agreement hereto being evidenced by your signature." This signature is wanting. The company had the right to require that Wiley should sign the contract before it should become operative. Such signature is usual, and would, in case of contention or trouble, relieve the company of the necessity of proving, by other evidence, that Wiley had accepted the terms of the contract, and had agreed to renew the work on notice. The question here turning on the construction of a contract,—the effect to be given to its words,—it seems not necessary to cite authority. It is elementary that there must be mutuality, a meeting of the minds of the contracting parties, upon the terms of the agreement. There must be more than one joining to complete the contract. "Every contract is founded upon the mutual agreement of the parties." 1 Story, Cont. § 11. "In order to create a contract, it is essential that there should be a reciprocal assent to a certain and definite proposition. A mere offer, not assented to, constitutes no contract; for there must be not only a proposal, but an acceptance thereof. So long as a proposal is not acceded to it is binding upon neither party, and may be retracted." Id. § 490.

In this case there is no presumption against the defendant that it did accept. It was optional with the defendant company to do so or not. If the word "Accepted," appearing at the bottom of the paper, was written by Wiley as an evidence that he did so accept, then his signature should be there also, or he

should aver that he did accept. The mere appearance of the word on a paper, bearing the signature of the defendant company only, does not convey the idea that it was placed there by Wiley as his act to bind him to the terms; especially when it is considered that the other contracting party says, in effect: "Your agreement is to be evidenced by your signature;" apparently inserted as a precaution against doubt on that point.

In *McDonald* v. *Bewick*, 51 Mich. 79, 16 N. W. Rep. 240, the following contract was under consideration: "We agree to sell  *  *  *  one million feet of Norway, in town 28 N., 8 E., on our lands,  *  *  *  and will make a contract with him giving him the right to go on said lands, and cut and remove said timber on payment. The price for said Norway to be $1.50 per M., board measure." That court say that it is no "contract.  *  *  *  There was no mutuality. It was the act alone of the defendants, and it was not supported by any duty or obligation of the plaintiff,  *  *  *  and there was no averment of acceptance."

"The acceptance of an offer must be absolute and unqualified, for until there is such an acceptance the negotiations of the parties amount to nothing more than proposals and counter-proposals." 3 Amer. & Eng. Cyclop. Law, 852. The paper addressed to Wiley is in the nature of a proposal to him, consenting to a postponement of the work on the condition and terms stated. He might be satisfied with the terms proposed, and willing to accept. He might desire longer notice, or to impose other terms; and, so long as the written offer is in that uncertain condition, we do not think it can amount to a contract, unless aided by averments which upon careful examination are not found in the bill of complaint.

The judgment below is affirmed.

HENDERSON and REEVES, JJ., concur.